## Ritter v. Lehigh Aircraft Company, Inc., et al.

*Arcus F. Shaffer*, for claimant.

*M. Jack Morgan*, for Lehigh Aircraft Co., Inc.

*Clarence A. Whitehouse*, for State Workmen's Insurance Fund.

HENNINGER, P. J., May 21, 1951.—Decedent, Joel H. Ritter, husband of claimant and father of their

three minor children, was a licensed airplane pilot and an employe of Lehigh Aircraft, Inc.

Warren W. York was president of Warren W. York & Co., Inc., investment bankers who owned an airplane housed at Allentown-Bethlehem-Easton Airport and used jointly by the owner and by Lehigh Aircraft under a rental contract with the owner. York was not a licensed pilot and whenever the plane was used for the firm of Warren W. York & Co., Inc., Lehigh Aircraft furnished a pilot at $5 per flying hour and $2 per hour nonflying time, expenses, and so forth. For flying hours, Lehigh Aircraft paid its pilots $4 per hour; the arrangement for nonflying time was not disclosed.

On November 17, 1948, York telephoned Ritter from Dallas, Tex., to bring his plane there and to fly York home. Ritter was only one of three Lehigh Aircraft pilots who flew the York plane. He cleared the assignment with his employer the next day and when the plane was ready flew it to Dallas. According to airport records the plane left Dallas, Tex., on November 18, 1948, landed at Waco, Tex., and on November 18, 1948, left the Lufkin Airport with New Orleans, La., as its destination. Neither the plane nor its passengers, Mr. and Mrs. York, have been heard from since, despite an intensive search.

All parties agree that Ritter met his death while piloting the York plane with New Orleans as its destination on November 18, 1948, or at the very latest the next day. The Workmen's Compensation Board and referee awarded Mrs. Ritter Workmen's compensation for the death of her husband while in the employ of, and while engaged in the business of, Lehigh Aircraft Co., Inc.

The insurance carrier, Pennsylvania State Workmen's Compensation Insurance Fund, has appealed to this court denying that Ritter at the time of his death

was in the employ of Lehigh Aircraft and averring that he was then and there in the employ of Warren W. York & Co. Both sides depend upon the testimony of Wilfred M. Post, president and general manager of Lehigh Aircraft Co., Inc.

In short, Post's testimony was that when one of their pilots flew the York plane, the owner's passenger determined the destination of the plane and the time for departure, but that the pilot had complete charge of the plane while in flight and absolute discretion to determine whether or not a proposed flight was actually to be undertaken.

Both sides agree that for workmen's compensation purposes the test to determine who is the employer of one generally employed by one employer and lent by him for a consideration to another is whether or not the one to whom an employe is hired exercises control over the loaned employe: McGorry v. Sterling Supply Corporation, 116 Pa. Superior Ct. 563, 566; Persing v. Citizens Traction Co., 294 Pa. 230, 237; Hoffman v. Montgomery County et al., 146 Pa. Superior Ct. 399, 402.

Upon an examination of these cases and of the testimony, we find that the whole controversy arises from the fact that the parties use the same word "control" in different connotations.

Certainly York gained control over the destination and schedule of the plane, for otherwise he would have no use for it, if it did not serve his convenience. Significant of Post's alleged admissions that York would have had any further control over Ritter is Post's statement that York could only request Ritter to actually operate the plane as York desired but that he could not compel him to do so except by "putting a gun in his back".

Whenever, in cross-examination, all of the elements of control such as destination, route and manner of

flight were included in one question Post answered: "I don't know how I would answer that." The reason for this hesitation, of course, was that York could control destination and, other conditions permitting, time or schedule, but Ritter as a licensed pilot and as the employe of Lehigh Aircraft could not surrender the power of control of operation of the plane entrusted to him. In this case ownership of the plane is of no importance, since Ritter was bound to safeguard lives rather than planes.

The word control was used in another connotation when Post was asked in cross-examination whether Lehigh Aircraft could control Ritter while he was in Texas. Of course the management of Lehigh Aircraft could not ride with its pilots to give them instructions minute by minute, but Ritter was their representative at the time and his discretion was their discretion. York, riding as a passenger in his company's plane, had no power to require the take off, to direct operation of the plane in flight or to compel Ritter to continue on a course Ritter himself deemed hazardous. Ritter's power to make independent decisions depended upon conditions as he found them; in this he acted as the employe and representative of Lehigh Aircraft and not at the discretion and control of York.

When we examine the cases cited we find that the borrowing employer is found to have had control over the employe when he exercises control over the "how" of operation. In none of Post's answers is there any concession that York had the slightest power or authority to control how Ritter should operate the plane. Even York's control over the where and the when of the plane's course was limited and restricted by Ritter's superior authority as to whether or how the plane was to be operated.

In our opinion this is decisive of the case and upholds the decision of the referee and board that at the

time of his death Ritter remained the employe of Lehigh Aircraft Company, Inc.

And now, May 21, 1951, the insurance carrier's appeal from the award of the Pennsylvania Workmen's Compensation Board in this action is dismissed and compensation is accordingly awarded and defendant and the State Workmen's Insurance Fund, insurance carrier for defendant, are hereby ordered and directed to pay to Alice Ritter, widow of Joel Ritter, deceased, on behalf of herself and her three minor children, compensation at the rate of $20 per week (maximum under the act) beginning November 25, 1948, to December 11, 1948, when Donald Joel Ritter became 16 years of age in the sum of $45.71, a period of 2 2/7th weeks; and compensation at the rate of $18 per week (maximum under the act for a widow and two children) on behalf of herself and Lorraine Alice Ritter and Gerry Robert Ritter, from December 11, 1948, to October 3, 1951, when Lorraine Alice Ritter becomes 16 years of age, a period of 146 4/7th weeks in the sum of $2,-638.29; and compensation at the rate of $15 per week (maximum under the act for a widow and one child) on behalf of herself and Gerry Robert Ritter from October 3, 1951, to August 26, 1954 (the end of the 300-week period) a period of 151 1/7th weeks in the sum of $2,267.14; compensation to Alice Ritter, guardian of Gerry Robert Ritter at the rate of $4.50 per week (maximum under the act for one child after the 300-week period) from August 26, 1954, to August 17, 1957, when Gerry Robert Ritter becomes 16 years of age, a period of 155 2/7th weeks, in the sum of $698.79; making the total award the sum of $5,649.93.

The above order is to bear interest at the rate of six percent on all deferred payments, according to section 410 of the act, and the carrier is to pay the costs of the appeal.